IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                        Plaintiff,

        Vs.                                        No.  96-40082-02-SAC

DERRICK V. JOHNSON,

                        Defendant.


MEMORANDUM AND ORDER

        The defendant Derrick V. Johnson asks the court to grant compassionate

release and reduce his sentence to time served under 18 U.S.C. §  3582(c)(1)(A)(i).

ECF# 236. Mr. Johnson was convicted on guilty pleas to counts one through three, five

and six of the indictment that charged him with three counts (1, 3 and 5) of violating

18 U.S.C. § 1951 (Hobbs Act robbery) and two counts (2 and 6) of violating 18 U.S.C. §

924(c) (Possession of a firearm during a crime of violence), and he received a

sentence totaling 468 months custody. ECF# 174. Broken down by offenses, Mr.

Johnson's sentence was 168 months for the Hobbs Act counts to run concurrently, 60

months for the first § 924(c) count to run consecutively, and 240 months for the

second § 924(c) count to run consecutively to all counts. *Id.* Pursuing no direct

appeal, Mr. Johnson filed a 28 U.S.C. § 2255 motion for relief under *Johnson v. United

States*, 576 U.S. 591 (2015), which was denied by this court, and the denial was

affirmed on appeal. ECF## 214 and 232.

Counsel for Mr. Johnson sent a written Compassionate Release Request to the Warden of FCI Petersburg Medium on July 28, 2020, based on the "extraordinary and compelling circumstances" that the First Step Act "rejected the judicially-created rule of stacking multiple" § 924(c) convictions, and if sentenced today, his sentence for the two § 924(c) convictions would have been ten years, not 25 years, and his total sentence would have been 288 months, not the 468 months he received. ECF# 236-1, p. 1. Mr. Johnson asked for a reduction of his sentence to time served or, at least, to the 288-month term of imprisonment consistent with the First Step Act. Mr. Johnson pointed to the additional factors of his completion of a GED, his lack of disciplinary incidents for the last five years, and his participation in many prison programs. As of October of 2020, Mr. Johnson calculates that he will have served 288 months without any good time credit.

Mr. Johnson has shown the warden received his request on July 29, 2020, and did not respond to Mr. Johnson. Because thirty days have passed without the Bureau of Prisons bringing a motion on Mr. Johnson's behalf, he may now file his own motion. 18 U.S.C. § 3582(c)(1)(A). And, the court may reduce the defendant's term of imprisonment, after considering applicable § 3553(a) factors, upon finding that "extraordinary and compelling reasons warrant such a reduction." *Id.*

Mr. Johnson argues his extraordinary and compelling reasons are "primarily because of the disparity between the 468-month sentence . . . [he] received in 1999 and the much lower 288-month sentence he would face today." ECF# 236, p. 3. When sentenced in 1999 on his two § 924(c) convictions, they were stacked resulting in consecutive sentences of five years for the first conviction and 20 years

2

for the second conviction. He points to the court decisions finding that the First Step Act brought a "drastic reduction in § 924(c) sentences with its elimination of stacking," *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020) (citing *United States v. Maumau*, No. 08-00758-TC-11, 2020 WL 806121 (D. Utah Feb. 18, 2020), *appeal filed*, (10th Cir. May 12, 2020), that results in an extraordinary and compelling reason for a sentence reduction because of the "gross disparity" between the former mandatory sentences and those now imposed under the First Step Act, *United States v. Reed*, 444 F.Supp.3d 717, 723 (E.D. Va. 2020); *see United States v. Urkevich*, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019), *appeal dismissed*, 2020 WL 5642024 (8th Cir. Apr. 1, 2020). Besides a string of citations from other districts, Mr. Johnson relies on Judge Marten's decision in *O'Bryan,* 2020 WL 869475, at *1, and this court's decision in *United States v. Stewart*, No. 98-40097-01-SAC, 2020 WL 4260637, at *4 (D. Kan. Jul. 24, 2020), both of which recognized that a court may consider the effect of a radically changed sentence for purposes of applying § 3582(c)(1)(A). As far as other circumstances supporting a sentence reduction, Mr. Johnson observes he has been imprisoned for 24 years or one-half of his life and submits a letter explaining how his perspective on life has changed. He also cites an institutional record evidencing rehabilitation based on obtaining a GED and participating in numerous programs, activities, and opportunities. The court understands that the defendant's only arguable reason for compassionate release is the § 924(c) disparity, because 28 U.S.C. § 994(t) provides that, "Rehabilitation of the defendant alone shall not be considered an extraordinary

and compelling reason" under § 3582(c). He denies being a danger to society and seeks to resume ties with family living in Kansas City.

In taking up the defendant's motion, the court is mindful that a court's authority to modify a defendant's sentence is limited to "specified instances where Congress has expressly granted the court jurisdiction to do so." *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (internal quotation marks and citation omitted), *cert. denied*, 574 U.S. 1101 (2015). Consequently, if the resentencing does not come "within one of the specific categories authorized by [18 U.S.C.] § 3582(c)," the district court is without jurisdiction to decide, the defendant's request. *United States v. Saldana*, 807 Fed. Appx. 816, 819, 2020 WL 1486892 at *3 (10th Cir. Mar. 26, 2020). Section 3582(c)(1)(A), as amended by the First Step Act ("FSA"), Pub. L. No. 115-39, 132 Stat. 5194 (Dec. 21, 2018), authorizes modification of a sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . . ." It is now Mr. Johnson's "burden of establishing that compassionate release is warranted under the statute." *United States v. Pullen*, No. 98-40080-JAR, 2020 WL 4049899, at *2 (D. Kan. July 20, 2020) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Bright*, No. 14-10098-JTM, 2020 WL 473323, at *1 (D. Kan. Jan. 29, 2020) ("extraordinary and compelling" standard imposes a heavy burden on an inmate seeking compassionate release under § 3582(c)(1)(A))).

The court's authority to modify Mr. Johnson's sentence as established by

statute entails considering the applicable factors set forth in section 3553(a) only

upon finding that "extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by

the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(1)(A). As far as the Sentencing

Commission's policy statements, Congress has directed:

> (t) The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, <u>shall describe what should be considered extraordinary and compelling reasons for sentence reduction</u>, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(t) (underlining added). In short, Congress directed the Sentencing

Commission to describe in a policy statement what reasons should be considered

extraordinary and compelling. The Sentencing Commission followed through with this

description in the policy statement at the U.S.S.G. § 1B1.13. As amended and

effective November 1, 2018, without change to date, this policy statement reads:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

U.S.S.G. 1B1.13. This policy statement has not been amended since the FSA, because

it does not recognize the court's authority to reduce a term of imprisonment upon a

defendant's motion as now allowed.

Application Note 1 to this policy statement provides further guidance:

**1. Extraordinary and Compelling Reasons.**--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:—
    **(A) Medical Condition of the Defendant.**—
        (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
        (ii) The defendant is--
            (I) suffering from a serious physical or medical condition,
            (II) suffering from a serious functional or cognitive impairment, or
            (III) experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
    **(B) Age of the Defendant.**--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
    **(C) Family Circumstances.**--
        (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
        (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
    **(D) Other Reasons.**--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 (n.1) (2019). In asserting the drastic sentencing disparity created by the FSA's abolition of the stacking of § 924(c) convictions, Mr. Johnson's compassionate release motion necessarily comes under the catch-all provision of subsection (D) or "Other Reasons."

      As already noted, this policy statement has not been amended after the FSA's passage. Just as the opening sentence of this policy statement does not

expressly contemplate a court ruling upon a defendant's motion, so subsection (D)

does not expressly contemplate a court determining whether there exists other

extraordinary and compelling reasons. From this circumstance, the government reads

the statutes empowering the Sentencing Commission to determine what are

extraordinary and compelling reasons as also excluding the courts from determining

what are extraordinary and compelling. The government then presumes the policy

statement in effect before the FSA operates upon the courts as if the policy

statement was written in contemplation of the FSA's changes. Thus, with respect to

subsection (D), the government advocates the following interpretation and

application:

> Under the plain language of this Guideline provision, the term "Other Reasons" is not a broad "catch-all provision." Instead, the "Other Reasons" category is expressly limited to cases in which "the Director of the Bureau of Prisons" has determined that "there exists in the defendant's case" sufficient reason to reduce the sentence. USSG § 1B1.13, Commentary, Note 1(d). In this sense, this provision establishes the Director of the Bureau of Prisons as the backstop, not the courts. Nothing in the Guideline or even the compassionate release statue itself gives authority to the courts to take over for the Director of the Bureau of Prisons on this particular determination.
> Here, the Director of the Bureau of Prisons has never determined that there are "extraordinary and compelling reason" for the defendant's release, so Note 1(D) plainly does not apply.

ECF# 237, p. 21. The court understands the government as saying that subsection (D)

is only available to the courts if the Director of the Bureau of Prisons in the first

instance has decided that (D) applies in this case. The force of this same logic puts in

doubt whether any part of this policy statement is applicable when a defendant

moves the court, because the policy statement's opening sentence still reads, "Upon

motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the

court may reduce  . . . ." If the courts are right to read one inapplicable and outdated

provision in the Policy Statement as not circumscribing their authority, it follows that the courts are right to read a parallel inapplicable and outdated provision in the same way. Indeed, a majority line of cases "reason that because the Commission's policy statement is by its own terms limited to compassionate release motions brought by the BOP, the policy statement is inapplicable to motions brought directly by defendant," and therefore, courts may independently determine what are extraordinary and compelling reasons when a defendant moves for compassionate release. *United States v. Andrews*, ---F.Supp.3d---, 2020 WL 4812626, at *4 (E.D. Pa. Aug. 19, 2020)(and cases cited therein), *appeal pending,* (3rd Cir. Sep. 4, 2020).

And so, while the government asks this court to reconsider its position taken in *United States v. Stewart*, No. 98-40097-01-SAC, 2020 WL 4260637 (D. Kan. Jul. 24, 2020), it is not persuaded to do so. The court remains convinced category (D) should be read and understood as the Sentencing Commission's Policy Statement. But that when a defendant files a motion with the court, the applicability of this statement is limited providing only some guidance to the courts in independently assessing whether such reasons exist and warrant a sentence reduction:

> Moreover, most courts in the District of Kansas, to date, have followed the lead of a majority of other district courts in holding that U.S.S.G. § 1B1.13 should now be applied as giving the district courts the same discretion given to the BOP Director under (D) to determine extraordinary and compelling reasons in the district courts. *See United States v. Pullen*, No. 98-40080-01-JAR, 2020 WL 4049899, at *3, n.28 (D. Kan. Jul 20, 2020) (and cases cited therein). The following summarizes the thinking of the courts on this:
>
>> Accordingly, "a growing consensus of courts across the country have concluded that, after the First Step Act, the Commission's policy statement 'does not constrain a court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A).'" In an unpublished opinion, Judge Marten recently joined the majority of district courts concluding that it has the authority to exercise the same discretion as the BOP when

weighing a request for compassionate relief in a case that did not raise the risk of COVID-19, but where the defendant was over the age of 70 and had served over thirty years in prison on his convictions.

The Court finds this authority persuasive—indeed, anything less than the same discretion as the Director of the BOP would be "antithetical to the First Step Act," and have "the perverse effect of penalizing prisoners who take advantage of the First Step Act's fast-track procedures and rewarding prisoners who endure the BOP-related delay that the Act sought to alleviate." The Court joins the majority of courts finding that it has the authority to independently assess whether there are extraordinary and compelling reasons to reduce Defendant's sentence. Therefore, the Court proceeds to ensure that its conclusions are consistent with the Sentencing Commission's policy statements but independently assesses whether Defendant presents "extraordinary and compelling reasons" justifying a reduction in sentence.

*United States v. Lavy*, No. 17-20033-JAR, 2020 WL 3218110, at *3–4 (D. Kan. Jun. 15, 2020) (footnotes and citations omitted); *see also United States v. Younger,* No. 16-40012-02-DDC, 2020 WL 3429490 at *4-*5 (D. Kan. Jun. 23, 2020) (Following the majority, the court rejects reading (D) as only invokable by the BOP and finds it may decide whether extraordinary and compelling reasons warrant compassionate release); *United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764 at *3 (D. Kan. May 29, 2020)("The overwhelming majority of courts, . . . have . . . concluded that a court may make the necessary determination that other circumstances warrant relief under this statute."); *United States v. Perez*, No. 88-10094-JTM, 2020 WL 1180719 (D. Kan. Mar. 11, 2020)("[A] majority of federal district courts have found that "the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." *United States v. Brown*, No. 4:05-CR-00227-1, 2019 WL 4942051, at *4 (S.D. Iowa Oct. 8, 2019)); *United States v. Adeyemi*, 2020 WL 3642478, at *10 (E.D. Pa. Jul. 6, 2020) ("A vast majority of judges considering whether courts may independently evaluate extraordinary and compelling reasons to reduce sentences have concluded they can." (and cases cited therein)). The court is persuaded by the weight of this authority and by the courts' reasoning for applying "(D) Other Reasons" to give district courts the same discretion as the BOP Director has to determine "extraordinary and compelling" reasons consistent with the statutory purpose of the FSA.

*United States v. Stewart*, 2020 WL 4260637, at *3-*4; *see also United States v.*

*McIntosh*, No. 11-20085-01-KHV, 2020 WL 5747921, at *5 (D. Kan. Sep. 29, 2020);

*United States v. Degarmo*, No. 18-10128-01-JWB, 2020 WL 5253410, at *3 (D. Kan.

Sep. 3, 2020).

The court likewise believes this approach is consistent with the Tenth Circuit's unpublished decision of *United States v. Saldana*, 807 Fed. Appx 816, 2020 WL 1486892 (10th Cir. Mar. 26, 2020). The Tenth Circuit reviewed a district court's denial of a § 3582(c)(1)(A) motion because the defendant had failed to establish extraordinary and compelling reasons to warrant a sentence reduction. 807 Fed. Appx. at 818. Mr. Saldana argued that his state law conviction no longer qualified as a crime of violence under Oklahoma law and that his "post-conviction behavior and participation in rehabilitative programs supported a sentence reduction." *Id*. In summarizing the Sentencing Commission's policy statement, the Tenth Circuit listed the four categories of reasons in Application Note 1 and quoted the additional description for "Other Reasons" including "[a]s determined by the Director of the Bureau of Prisons." *Id*. at 819. The Tenth Circuit then observed:

> BOP Program Statement 5050.50 identifies several nonexclusive factors to determine whether "other" extraordinary and compelling reasons exist: the defendant's criminal and personal history, nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans, and "[w]hether release would minimize the severity of the offense." BOP Program Statement 5050.50 at 12 (2019); *see Reno v. Koray*, 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (holding that BOP program statements are entitled to "some deference" when they reflect a "permissible construction of the statute" (quotations omitted)).

*Saldana*, 807 Fed. Appx. at 819 (footnote omitted). The panel then held in part:

> Second, neither the § 1B1.13 commentary nor BOP Program Statement 5050.50 identify post-sentencing developments in case law as an "extraordinary and compelling reason" warranting a sentence reduction. Moreover, Mr. Saldana does not explain how his request overcomes our cases stating that § 3582(c), a jurisdictional statute, does not authorize a sentence reduction based on new case law, *see United States v. Price*, 438 F.3d 1005, 1007 (10th Cir. 2006), including developments in "crime of violence" case law, *see United States v. Diggs*, 365 F. App'x 961, 962 (10th Cir. 2010) (unpublished). We thus find no error in the district court's decision not to consider § 3582(c)(1)(A)(i) relief on

that basis.

807 Fed. Appx. at 820 (footnote omitted). The court concluded that the district court should have dismissed the defendant's motion for lack of jurisdiction, because he had failed to show the availability of relief under § 3582(c) necessary for the court's jurisdiction.

Of course, the *Saldana* decision is not binding precedent. It is noteworthy that the Tenth Circuit looked to the BOP Program Statement in interpreting what "Other" reasons would qualify as extraordinary and compelling. This Program Statement was written after the FSA. As the Tenth Circuit noted, this statement is entitled to some deference in construing Application Note 1. At a minimum, the Tenth Circuit "impliedly recognized" a district court would decide whether "Other" extraordinary and compelling reasons exist guided by Application Note 1 and by the BOP Program Statement construing it. *United States v. Tijuan A. Lee*, No. 10-20128-01-KHV, 2020 WL 5993505, at *5 (D. Kan. Oct. 9, 2020). The court rejects the government's argument that judicial authority depends on the Director of the Bureau of Prisons first determining whether a subsection (D) extraordinary and compelling reason exists for that defendant. ECF# 237, p. 21. Instead, the court may on a defendant's motion, independent of the BOP, "determine whether defendant has established" "Other" reasons that are extraordinary as meaning "exceptional to a very marked extent" and are consonant with nonexclusive factors listed in the BOP Program Statement. *See Lee*, 2020 WL 5993595, at *6.

Stacked § 924(c) Sentences

This brings us to the second, and more difficult, question. Does the fact

11

that Mr. Johnson would have received a substantially shorter sentence under the later enacted FSA, which abolished the stacking of § 924(c) sentences, constitute an extraordinary and compelling reason? The government voices serious concerns over calling extraordinary and compelling a subsequent legislative change in sentencing when Congress overtly chose to make this change non-retroactive. In the government's judgment, this approach would tolerate the courts modifying sentences because they always disagreed with the length of the mandatory sentences. And such an open-ended compassionate release mechanism would be subject to a court's unbridled discretion and could result in more unjustified sentencing disparities. It also would undermine Congress' power to define criminal punishments and would turn mandatory sentencing statutes into advisory and temporary schemes. The government finds no evidence that Congress contemplated in allowing defendants to file compassionate release motions that the courts could now override statutory mandatory sentences simply because they disagree with them. Most importantly, the government points to Congress specifically deciding not to make retroactive the FSA's abolition of § 924(c) stacking. Because Mr. Johnson's sentencing occurred nearly two decades before the FSA abolished § 924(c) stacking, the government contends he is ineligible for a reduction based on this amendment. To extend the compassionate release grounds to achieve the very retroactivity which Congress chose not to grant, in the government's opinion, would "transfer control of retroactivity decisions from Congress to the individual district courts." ECF# 237, p. 29.

The court appreciates that the government's position summarized above is more fully developed and argued than what was presented to this court in *Stewart*.

The government there was content to argue that the court's reliance on this legislative change would be an "end run" around Congress's decision not to make it retroactive. *Stewart*, 2020 WL 4260637, at *4. Other courts had already rejected this argument recognizing the distinction between automatic relief upon a retroactive change and the discretionary relief upon a compassionate release motion. *Id*. at *4-*5 (citing *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *1 (D. Kan. Feb. 21, 2020) (and cases cited therein)). The court concurred that this distinction avoided the notion that the courts were necessarily acting contrary to congressional intent. Basing relief on a sentencing disparity that resulted from legislative change is qualitatively different from saying relief is always justified due to a retroactive legislative change. "Thus, the courts in taking this approach are not so much making an end run aground Congress but fulfilling Congress's intent of providing judicial discretion inherent in compassionate release determinations based on the individual defendant's circumstances which may include a drastic sentencing disparity for serious § 924(c) convictions." *Stewart*, 2020 WL 4260637, at *5. This court also followed the other courts in ascribing some congressional intent based on its use of "Clarification" as the title to its elimination of stacked § 924(c) sentences. *Id*. Namely, that Congress never wanted stacking of § 924(c) sentences in one case. Against this backdrop of case law and rationales, this court carefully worded its conclusion:

> Based on the authority and rationale cited and discussed above, the court concludes that Mr. Stewart's gross sentencing disparity of 15 years created by the stacking of § 924(c) convictions at the time of sentencing and by FSA's subsequent elimination of stacking as a "sentencing clarification" and the fact of Mr. Stewart having already served more than five of those additional fifteen years together constitute a permissible "extraordinary and compelling" reason

for considering a compassionate release consistent with the weight of the case law to date.

*Stewart*, 2020 WL 4260637, at *5. The court's holding highlights that Mr. Stewart had served more than a third of his 15-year disparity and that the court understood its ruling was "consistent with the weight of the case law to date." *Id.*

The holding in *Stewart* is distinguishable here. First, Mr. Johnson has not served over a third of his sentence. Second, the government has presented new and more developed arguments here. Finally, the court cannot write with same confidence that its holding in *Stewart* is consistent with the persuasive weight of prevailing case law. In the meantime, Judge Lungstrum has decided that a disparity in sentence length created by "a change in sentencing law cannot serve as the basis for relief under Section 3582(c)(1)(A)." *United States v. Rucker*, No. 04-20150-JWL, 2020 WL 4365544, at *3 (D. Kan. Jul. 30, 2020), *appeal filed*, (10th Cir. Aug. 13, 2020). Having already held that a different change in sentencing law was not an extraordinary and compelling reason, the court in *Rucker* extended its holding to the FSA's change that eliminated 924(c) stacking:

> A heading cannot substitute for the operative text of a statute, *see Florida Dept. of Rev. v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008), and Section 403 of the FSA expressly states that it applies to an offense committed before the amendment if the sentence for the offense had not been imposed at the time of enactment of the FSA. *See* Pub. L. No. 115-391, § 403, 132 Stat. at 5222. Thus, Congress did not fail to address retroactivity; rather, it expressly limited the retroactive effect of the statute. It declined to make the statute retroactive even though the law had been applied differently for at least 25 years, since the Supreme Court decided *Deal*. At the same time, in Section 404 of the FSA, Congress did allow for the retroactive application of other changes in sentencing law. *See id.* § 404, 132 Stat. at 5222. Similarly, 18 U.S.C. § 3582(c)(2) allows for the retroactive application of some changes in the sentencing guidelines. *See id.* No statute allows for the retroactive application of the FSA's change to the stacking provisions. Section 3582(c) expressly prohibits a court from modifying a term of imprisonment once imposed except

14

as expressly permitted. Therefore, applying the FSA retroactively in this case, as effectively urged by defendant in seeking compassionate relief based on the sentencing disparity, would run afoul of Section 3582(c) and the FSA.

*Id*. at *3 (footnote omitted). Other courts have found *Rucker* persuasive authority not only on general changes in sentencing laws and but on the § 924(c) stacking change specifically. *See United States v. Hill*, 2020 WL 5104477, at *3 (N.D. Ohio Aug. 31, 2020)(sentencing law change); *United States v. Lewis*, 2020 WL 4583525, at *2 (M.D. Fla. Aug. 10, 2020)(§ 924(c) stacking change). As *Rucker* persuasively observes, the very provision entitled, "Clarification," contains express and specific language that defines applicability as to rule out any intent or lingering notion for this change also applying to sentences imposed before the enactment of the FSA.

Another decision after *Stewart* offers compelling analysis on this issue:

The FSA's amendment to § 924(c) cannot be an extraordinary and compelling reason because this would intrude on Congress's authority to determine the temporal scope of its statutes. The amendment is expressly not retroactive, and the retroactivity of a statute is determined by Congress and not by a court, unless Congress has not expressly determined its retroactivity. Granting a motion for compassionate release on the basis of the amendment to § 924(c) would supplant the retroactivity determination of courts—that the amendment should be applied retroactively on a case-by-case basis—for the retroactivity determination of Congress—that the amendment should not be applied retroactively. When Congress speaks on the retroactivity of the statute, its judgment is final.

Retroactivity doctrine "allocates to Congress responsibility for fundamental policy judgments concerning the proper temporal reach of statutes." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 273, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). And a court only determines the retroactivity of a statute when "the statute contains no [ ] express command" regarding retroactivity. *Id*. at 280, 114 S.Ct. 1483. This is because "the legislative power is the power to make law, and Congress can make laws that apply retroactively." *Patchak v. Zinke*, --- U.S. ----, 138 S. Ct. 897, 905, 200 L.Ed.2d 92 (2018). The constitutional restrictions on Congress's authority to decide the retroactivity of statutes are limited to the Ex Post Facto Clause, the Contracts Clause, the Takings Clause, the Bills of Attainder Clause, and the Due Process Clause. *Bank Markazi v. Peterson*, --- U.S. ----, 136 S. Ct. 1310, 1325, 194 L.Ed.2d 463 (2016) (citing *Landgraf*, 511 U.S. at 266–67, 114 S.Ct. 1483). But "[a]bsent a violation

of one of those specific provisions," the Court must give a statute "its intended [temporal] scope." *Id.* (quoting *Landgraf*, 511 U.S. at 267–68, 114 S.Ct. 1483). . . . .

This reasoning [used by courts holding the § 924(c) can be a reason for compassionate release] is not persuasive. This interpretation "effectively [provides the statute] retroactive effect on a case-by-case basis." *United States v. Jackson*, No. 08-cr-20150-02, 2020 WL 2812764, at *5 (D. Kan. May 29, 2020), *reconsidered on other grounds*, No. 08-cr-20150-02, 2020 WL 4284312, at *1 (D. Kan. July 27, 2020). The amendment provides as follows: "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." § 403(b), 132 Stat. 5194, 5222. The text of the amendment plainly states that individuals will receive the benefit of the amendment if they have not been sentenced. Considering the amendment as an extraordinary and compelling reason is giving the benefit of the amendment to individuals who were already sentenced, thus turning the amendment on its head. If Congress wanted the amendment to be retroactive on a case-by-case basis, it would have said so in the text of the statute.

The legislative history of the FSA informs that the amendment was the product of a legislative compromise, which the Court must respect. In other words, the Court must "giv[e] full effect to all of Congress' statutory objectives, as well as the specific balance struck among them." *Lewis v. Alexander*, 685 F.3d 325, 343 (3d Cir. 2012) (citing *Rodriguez v. United States*, 480 U.S. 522, 525–26, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987)). To contradict the plain text of the statute based on the title of the amendment or the greater purpose of the FSA "frustrates rather than effectuates legislative intent." *Rodriguez*, 480 U.S. at 526, 107 S.Ct. 1391. Invocations of lofty ideals of criminal justice reform enshrined throughout the FSA do not override the plain text of the amendment.

Moreover, the argument that compassionate release can be used as a vehicle to provide case-by-case retroactivity without running afoul of the retroactivity provision ignores principles of statutory construction. The Court looks to "the canon generalia specialibus non derogant, that the specific governs the general in interpreting a statutory scheme." *Cazun v. Attorney Gen. United States*, 856 F.3d 249, 256 (3d Cir. 2017). Before applying this canon, it must be determined that the two provisions at issue "both address the same subject matter" and "cannot be reconciled." *Creque v. Luis*, 803 F.2d 92, 94-95 (3d Cir. 1986).

The generalia canon forecloses the use of the compassionate release provision to circumvent the retroactivity provision. The two provisions address the same subject matter in that, when compassionate release takes the amendment into account, they both address whether sentenced defendants will get the benefit of the amendment. And holding that the provisions are reconciled by not giving the benefit of the amendment to all sentenced defendants but only to some sentenced defendants on a case-by-case basis is a

rewriting of the amendment, not a reconciliation at all. To be retroactive is to "extend[ ] in scope or effect to matters that have occurred in the past." Retroactive, Black's Law Dictionary (10th ed. 2014). The retroactivity provision provides specifically that the amendment will extend to matters where the defendant has not been sentenced. To construe the amendment to apply to matters where the defendant has already been sentenced makes the general provision trump the specific provision.

*United States v. Andrews*, ---F.Supp.3d---, 2020 WL 4812626, at *7–*10 (E.D. Pa. Aug. 19, 2020). This decision also persuasively shows that an expansive reading and application of the compassionate release provision for this statutory change would undermine not only the doctrines of legislative power and legislative intent but would run afoul of established principles on the retroactivity doctrine and statutory interpretation.

Based on the government's new arguments, on the different circumstances between Mr. Johnson and Mr. Stewart, and on the new and persuasive decisions handed down since *Stewart*, the court, if it were to rule on Mr. Johnson's motion, would deny it at this juncture. As already noted, Mr. Johnson asserts the sentence disparity created by the FSA's elimination of 924(c) stacking as his only possible extraordinary and compelling reason. The government has limited its opposition to that reason too. Judge Lungstrum's decision in *Rucker* is now before the Tenth Circuit, and the issue on appeal appears to be the same issue controlling in this case. Thus, the court offers the parties the alternative of staying this case until the Tenth Circuit rules on this issue either in *Rucker* or in another case before it, whichever is earlier. If the parties would prefer finality, the court will enter a subsequent order denying the defendant's motion for the reasons stated herein and dismiss the case for lack of jurisdiction. The parties shall have ten days from the filing

17

date of this order to inform the court of their position.

IT IS THEREFORE ORDERED that defendant Johnson's motion for compassionate release remains under advisement, and the parties shall file with the court to positions on whether to stay the case until an appellate ruling or to have the court proceed with filing a dispositive decision for the reasons outlined above.

Dated this 20th day of October, 2020, Topeka, Kansas.

/s Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge