# UNITED STATES DISTRICT COURT

## District of Kansas

### (Topeka Division)

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                 CASE NO.: <u>96-40082-02-SAC</u>

DERRICK V. JOHNSON,

        Defendant.

## GOVERNMENT'S SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

APPEAR NOW the United States of America, by and through Jared S. Maag, Assistant United States Attorney, and submit for the Court's consideration this supplemental response to the defendant's motion for compassionate release.

I.    <u>ARGUMENT</u>

Again, the defendant argues he is an appropriate candidate for compassionate release on grounds that his controlling sentence of 468 months' imprisonment violates the anti-stacking provisions of the First Step Act.   (Doc.

1

249, Def. Supp. Mot. for Release at 2.)   For the following reasons the government moves this Court to reject his request.

A.   Legal Framework

As a general matter, federal courts are prohibited from modifying a defendant's term of imprisonment once it has been imposed; however, this rule is subject to a limited number of narrow exceptions.   *Freeman v. United States*, 564 U.S. 522, 526 (2011).   Section 3582(c)(1) qualifies as one of these exceptions and now provides that a district court is authorized to grant a motion for reduction of sentence whether filed by the Director of the BOP or upon motion of the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."   18 U.S.C. § 3582(c)(1)(A).   Importantly, however, a district court may grant a motion for sentence reduction *only* if the following three requirements are met: (1) there are extraordinary and compelling reasons warranting the reduction; (2) the reduction is consistent with the applicable policy statements issued by the United States Sentencing Commission; and (3) the district court considers the factors set forth in Section 3553(a), to the extent they are applicable.   (*Ibid*).

2

To satisfy the requirements of Section 3582(c)(1)(A), a district court must engage in a three-step process. *United States v. McGee*, ___ F.3d. ___, 2021 WL 1168980, at \*5 (10th Cir. Mar. 29, 2021) (adopting test established in *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)); see also, *United States v. Maumau*, ___ F.3d. ___, 2021 WL 1217855, at \*7 (10th Cir. Apr. 1, 2021) ("Because this three-step test is consistent with the plain language of [Section 3582(c)(1)(A)], we adopt the test for use in this circuit.").

At step one, a district court must find whether extraordinary and compelling reasons warrant a sentence reduction. *McGee*, 2021 WL 1168980 at \*5. To that end, "the most plausible interpretation of . . . [Section] 3582(c)(1)(A)(i) is that Congress intended to afford district courts with discretion, in carrying out the first step of the statutory test . . . [and] to independently determine the existence of 'extraordinary and compelling reasons,' and for the discretion to be circumscribed under the second step of the statutory test by requiring district courts to find that a sentence reduction is consistent with the applicable policy statements issued by the Sentencing Commission." *Id*. at \*6-\*8.

At step two, a district court must determine whether such reduction is consistent with applicable policy statements issued by the Sentencing

Commission.   *Id.* at *5.   As highlighted by the Court in *McGee*, the Sentencing Commission's description of what constitutes "extraordinary and compelling reasons" must be viewed as a "general policy statement" rather than the equivalent of a statutory definition.   *Id.* at *6.   As the Court in *McGee* opined:

> . . . in applying the first part of [Section] 3582(c)(1)(A)'s statutory test, [district courts] have the authority to determine for themselves what constitutes "extraordinary and compelling reasons," but that this authority is effectively circumscribed by the second part of the statutory test, i.e., the requirement that a district court find that a reduction is consistent with applicable policy statements issued by the Sentencing Commission pursuant to [Sections] 994(a)(2)(C) and (t).   In other words, we conclude that Congress did not, by way of [Section] 994(t), intend for the Sentencing Commission to exclusively define the phrase "extraordinary and compelling reasons," but rather for the Sentencing Commission to describe those characteristic[s] or significant qualities or features that typically constitute "extraordinary and compelling reasons," and for those guideposts to serve as part of the general policy statements to be considered by district courts under the second part of the statutory test in [Section] 3582(c)(1)(A).

*Id.* at *8.[1]

---

[1] Notably, the Court in *McGee* concluded, consistent with the Second, Fourth, Sixth, and Seventh Circuits, "that the Sentencing Commissions' existing policy statement is applicable *only* to motions for sentence reductions filed by the Director of the BOP, and not to motions filed directly by defendants."   2021 WL 1168980, at *12 (emphasis supplied); see also *Maumau*, 2021 WL 1217855, at *11 (rejecting the government's position that Section 1B1.13 remains binding on the district court when a defendant files a motion for sentence reduction under Section 3582(c)(1)(A) directly with the district court).

Finally, at step three, a district court must address the applicable factors under Section 3553(a).   *Id*. at *5.    A district court may deny compassionate release when any of the three prerequisites listed in Section 3582(c)(1)(A) is lacking and need not address the other factors.   *Id*. (citing *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021)).   Conversely, when a district court determines that compassionate release is warranted, "it must of course address all three steps."   *Id*. (quoting *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)).

Relevant here, Section 3582(c)(1)(A) itself requires that the reason for release be "extraordinary and compelling."   And, as the Court in *Maumau* noted, a sentence reduction must be supported by "a combination of factors" that warrant a sentence reduction for extraordinary and compelling reasons. 2021 WL 1217855, at *12.

Chief Judge Tymkovich's concurring opinion in *Maumau* is particularly instructive on this latter point.   *Id*. at *12-*13.   There, Chief Judge Tymkovich wrote separately to "note that our holding does not give district courts carte blanche to retroactively apply in every instance the amendments to the stacking provision in 18 U.S.C. § 924(c)."   *Id*. at *13.   Indeed, "[a] long sentence derived from stacking cannot, by itself, be an 'extraordinary and compelling' reason for sentence reduction."   *Id*. at *13.   Plainly stated, ". . . the imposition

of a sentence that was not only permissible but statutorily required at the time is neither an extraordinary nor a compelling reason to now reduce that same sentence.   Instead, a district court may consider the legislative change to the stacking provision only in the context of an individualized review of a movant's circumstances."   *Id.* at *13.   In this instance the defendant submits that "[t]he elimination of the stacked § 924(c) sentence [the defendant] is serving, plus his individual circumstances, including the length of time he has already served, the vastly reduced sentence he would face after the First Step Act, his young age at the time of his offense, and his post-sentencing rehabilitation, warrant a reduction."   (Doc. 249, Supp. Mot. for Release at 2, 8-12.)

      B.   <u>Argument</u>

      Here, the individualized circumstances demonstrate that the defendant, along with Thomas Harris, committed a series of Hobbs Act robberies in Oak Grove, Missouri, Buckner, Missouri, Excelsior Springs, Missouri, Smithville, Missouri, Ottawa, Kansas, Olathe, Kansas, and Lawrence, Kansas between September 9, 1996 and October 21, 1996.   See *United States v. Harris*, 761 Fed.Appx. 852 (10th Cir. 2019); see also PSIR at 7-13, ¶¶ 14-41.   These robberies were particularly severe because "[i]n several of the robberies, female victims were forced to disrobe . . . [and] [s]ome victims were sexually battered."   *United*

*States v. Harris*, No. 96-40082-01-SAC, 1997 WL 447676, at *1 (D.Kan. June 5, 1997); see also PSIR at 8, ¶ 18 (defendant's rape of victim in robbery of Osage Communications in Buckner, Missouri); PSIR at 9, ¶ 23 (defendant's sexual battery of victim); PSIR at 11, ¶ 31 (defendant's attempted rape of victim); PSIR at 12, ¶¶ 34-35 (victim ordered to disrobe).   The government moves the Court to again review the victim's statement recounting how her life has forever been changed by the defendant's violent rape during the robbery in Buckner, Missouri.   PSIR at 16-18, ¶ 54.

It should also be noted that the defendant categorically denied his involvement in three of the robberies, failing to take full responsibility for his actions.   PSIR at 21-22, ¶¶ 65-66.

The defendant has demonstrated on occasion that he cannot act in accordance with BOP rules.   His most serious offenses have included possessing drugs/alcohol and assault without serious injury.

## Discipline Reports

| Hearing Date | Prohibited Acts |
|---|---|
| 09-17-2015 | 113 : POSSESSING DRUGS/ALCOHOL |
| 09-27-2013 | 112 : USE OF DRUGS/ALCOHOL |
| 04-18-2012 | 397 : PHONE ABUSE - NO CIRCUMVENTION |
| 04-20-2009 | 224 : ASSAULTING W/O SERIOUS INJURY |
| 12-24-2008 | 306 : REFUSING WORK/PGM ASSIGNMENT |
| 11-21-2008 | 306 : REFUSING WORK/PGM ASSIGNMENT |
| 10-03-2008 | 306 : REFUSING WORK/PGM ASSIGNMENT |
| 08-18-2008 | 306 : REFUSING WORK/PGM ASSIGNMENT |
| 08-12-2008 | 306 : REFUSING WORK/PGM ASSIGNMENT |
|  | 307 : REFUSING TO OBEY AN ORDER |
| 01-03-2008 | 212 : ENGAGING IN GROUP DEMONSTRATON |
| 09-19-2007 | 306 : REFUSING WORK/PGM ASSIGNMENT |
| 09-12-2007 | 306 : REFUSING WORK/PGM ASSIGNMENT |
| 07-31-2007 | 306 : REFUSING WORK/PGM ASSIGNMENT |
|  | 307 : REFUSING TO OBEY AN ORDER |
| 11-01-2006 | 306 : REFUSING WORK/PGM ASSIGNMENT |
| 08-23-2006 | 306 : REFUSING WORK/PGM ASSIGNMENT |
|  | 307 : REFUSING TO OBEY AN ORDER |
| 06-21-2006 | 306 : REFUSING WORK/PGM ASSIGNMENT |
|  | 307 : REFUSING TO OBEY AN ORDER |
| 04-26-2006 | 306 : REFUSING WORK/PGM ASSIGNMENT |
| 04-19-2006 | 317 : FAILING TO FOLLOW SAFETY REGS |
| 03-01-2006 | 306 : REFUSING WORK/PGM ASSIGNMENT |
|  | 307 : REFUSING TO OBEY AN ORDER |
| 01-17-2006 | 306 : REFUSING WORK/PGM ASSIGNMENT |
|  | 307 : REFUSING TO OBEY AN ORDER |
| 12-09-2005 | 310 : BEING ABSENT FROM ASSIGNMENT |
| 09-19-2005 | 222 : POSSESSING INTOXICANTS |
| 04-07-2005 | 222 : POSSESSING INTOXICANTS |
| 04-09-2002 | 306 : REFUSING WORK/PGM ASSIGNMENT |
| 03-19-2002 | 306 : REFUSING WORK/PGM ASSIGNMENT |
| 11-15-2001 | 306 : REFUSING WORK/PGM ASSIGNMENT |
| 08-14-2001 | 306 : REFUSING WORK/PGM ASSIGNMENT |

| Hearing Date | Prohibited Acts |
| --- | --- |
| 07-25-2001 | 223 : REFUSING TO TAKE ALCOHOL TEST |
| 05-30-2001 | 104 : POSSESSING A DANGEROUS WEAPON |
| 03-16-2001 | 310 : BEING ABSENT FROM ASSIGNMENT |
| 05-25-2000 | 313 : LYING OR FALSIFYING STATEMENT |
| | 316 : BEING IN UNAUTHORIZED AREA |

Notably, the defendant appears to not have any interest in satisfying his restitution obligations.

**Financial Responsibility Summary**

At the time of sentencing, Inmate Johnson was ordered to pay a $500.00 felony assessment fee.  He is not currently participating in the Financial Responsibility Program, he is in FRP Refusal for non-payment.

Likewise, the defendant would have been given significant opportunities to participate in educational opportunities while in BOP.   However, in the 20+ years of incarceration, the defendant has only involved himself in 16 courses. Of note, the defendant did not seek to avail himself of the opportunity for needed educational or vocational training from 2000-2003, from 2005-2010, in 2011, from 2013-2017, in 2019 and in 2021.   Thus, contrary to the defendant's assertion (Doc. 249 at 10) he has not necessarily used "his time in prison productively, to prepare himself for successful reentry."   The following record demonstrates the courses completed by the defendant.

```
----------------------------- EDUCATION COURSES -----------------------------
SUB-FACL    DESCRIPTION                    START DATE  STOP DATE EVNT AC LV  HRS
PEM         BASIC ANATOMY                  01-29-2020 02-06-2020  P   C  P    10
PEM         SPORTS OFFICIATING             06-12-2018 08-13-2018  P   C  P    20
PEM         FAST TRACK GED #4              06-20-2012 07-17-2012  P   C  P    40
PEM         ACE-SELFPACE WORLD EXPLORERS   02-09-2012 03-08-2012  P   C  P     8
PEM         HISTORY OF AMERICAN RAILROAD   06-01-2012 07-06-2012  P   C  P     8
PEM         GREAT SPORTS MOMENTS(SELFPACE) 05-11-2012 06-22-2012  P   C  P     9
PEM         RPP #6 ANGER MANAGEMENT F-N    04-20-2012 06-08-2012  P   C  P    10
PEM         ACE-SELFPACE AFRICAN WILD      04-01-2012 05-24-2012  P   C  P     8
PEM         HIV/AIDS AWARENESS             03-07-2012 03-07-2012  P   C  P     2
ATW         RESPONSIBLE FATHERHOOD         07-12-2010 08-24-2010  P   C  P     9
ATW         RPP PERSONAL FINANCIAL MGMNT   05-28-2010 06-10-2010  P   C  P     2
ATW         RPP EFFECTIVE INTERVIEW SKILLS 05-28-2010 06-10-2010  P   C  P     2
ATW         RPP JOB SEARCH SKILLS          05-28-2010 06-10-2010  P   C  P     2
ATW         RPP RESUME SKILLS              05-28-2010 06-10-2010  P   C  P     2
POL         USP RECREATIONAL AIDES         11-14-2004 11-18-2004  P   C  P    30
LVN         GED 1300-1500 PURSEL           03-26-1999 03-26-2001  P   W  V   241
```

Applying the Section 3553 factors here strongly militate against reducing the defendant's sentence to time-served.   Without question, a reduction to time-served would run counter relative to the nature and seriousness of his multiple and egregious Hobbs Act robberies and attendant sexual assaults, and the need for the instant sentence to provide just punishment and promote respect for the law.   More to the primary point of concern, releasing the defendant undervalues the gravity of the crimes that he committed and severely minimizes the seriousness of the particularly heinous acts that he performed on the victims who must continue to live with the trauma inflicted upon them.   *Cf. United States v. Webster*, --- F.Supp.3d ---, 2020 WL 618828, at *8 (E.D. Va. Feb. 10, 2020) (rejecting terminally ill defendant's compassionate release motion on grounds that "allowing this twice-convicted murderer to walk free before he has completed his sentence would be unjust to his victims and the public at large").

The defendant certainly has a voice in this argument, but the victims have an equal right to be heard and a more compelling argument to make here, namely, that the defendant should not benefit from early release given the particularly serious nature of these robberies, one of which involved him violently raping a store employee.   PSIR at 8, ¶ 18.

In the end, denying the defendant's motion will uphold the public's faith— and the victims' trust—in our system of justice and provide the necessary balance that is ultimately deserving in this case.   Thus, given that the applicable 3553(a) factors do not weigh in favor of the defendant's request for compassionate release, his arguments must be rejected, and the motion denied

Finally, as this Court is well-aware, Section 3582(c)(1)(A)(i) provides that the court "may reduce" the sentence.   The "use of 'may' is quintessential discretionary language." *United States v. Sutton*, 962 F.3d 979, 986 (7th Cir. 2020); *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020) ("This last requirement confirms an overarching point: The district court has substantial discretion.   The statute says that the district court "may" reduce a sentence if it finds the first two requirements met; it does not say that the district court *must* do so.   Even if those conditions are met, therefore, a district court may still deny relief if it finds that the "applicable" [Section] 3553(a) factors do not justify it.")

(internal citations omitted).   Again, this Court should apply this discretion and otherwise deny the defendant relief given the gravity of his offenses.   A reduction to time-served would unquestionably run counter relative to the nature and seriousness of his offenses and the need for his sentence to continue to provide just punishment and otherwise promote respect for the law.

## II.   <u>CONCLUSION</u>

Once again, ". . . the imposition of a sentence that was not only permissible but statutorily required at the time is neither an extraordinary nor a compelling reason to now reduce that same sentence.   Instead, a district court may consider the legislative change to the stacking provision only in the context of an individualized review of a movant's circumstances."   *Maumau*, 2021 WL 1217855 at *13.   A review of the movant's circumstances demonstrates that a sentence reduction is not appropriate.   Consequently, his arguments must be rejected, and his motion overruled.

Respectfully submitted,

DUSTON J. SLINKARD
Acting United States Attorney
District of Kansas

By:   /s/   *Jared S. Maag*
             JARED S. MAAG, KS Bar No. 17222
             Assistant United States Attorney
             District of Kansas
             290 Carlson Federal Building
             444 SE Quincy Street
             Topeka, KS 66683
             Ph: 785.295.2850 (Office)
             Fax: 785.295.2853
             jared.maag@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of April, 2021, I electronically filed the foregoing Supplemental Response with the Clerk of the Court by using the CM/ECF system, and that a copy of this filing was electronically delivered to:

Kayla Gassmann
Assistant Federal Public Defender
Kayla_Gassmann@fd.org

By:   /s/   *Jared S. Maag*
             JARED S. MAAG, KS Bar No. 17222
             Assistant United States Attorney